IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD HANCOCK, | Case No. CV-04-537-E-BLW |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| IDAHO FALLS SCHOOL DIST. NO. 91; BOARD OF TRUSTEES, IDAHO FALLS SCHOOL DIST. NO. 91; SUPERINTENDENT JOHN MURDOCK, in his official capacity, | |
| Defendants. | |

## INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment as to Plaintiff's State Law Claims (Docket No. 13), Defendants' Motion for Summary Judgment as to Plaintiff's Constitutional Claims (Docket No. 14), and Plaintiff's Motion for Partial Summary Judgment (Docket No. 19). The Court held oral argument on February 27, 2006 and now issues the following opinion.

## BACKGROUND

Plaintiff Richard Hancock is a teacher at Idaho Falls School District No. 91 (the "School District"). Hancock has worked for the School District since 1991.

**Memorandum Decision and Order - 1**

John Murdock is the Superintendent of the School District, which is administrated by a Board of Trustees (the "Board"). Murdock, the School District and the Board are the named defendants in this matter ("Defendants").

The facts of this case are lengthy. In brief, Hancock is suing Defendants for suspending him, transferring him, issuing an order preventing him from contacting the school, students, parents or other school personnel, and disclosing his confidential medical records to other colleagues and supervisors. Hancock asserts claims for violation of the United States and Idaho Constitutions, several breach of contract claims, an intrusion of privacy claim, and two emotional distress claims. Both parties have filed motions for summary judgment as to Hancock's claims. The Court will address the motions on a per claim basis, and rather than recount all of the facts here, the Court will state the relevant facts as they relate to each of Hancock's claims below.

## ANALYSIS

**A.    First Claim for Relief - Violation of Freedom of Speech and Association Provisions of First Amendment and 42 U.S.C. § 1983.**

The parties filed cross motions for summary judgment on Hancock's first claim for relief. In that claim, Hancock asserts that Defendants violated his rights under the First Amendment of the United States Constitution when Superintendent Murdock issued an order directing that Hancock,

**Memorandum Decision and Order - 2**

> [m]ake no contact with the school, students, parents or other school personnel, either publicly or privately, until you receive medical clearance to return to work. Any exceptions to the above must go through the IEA designee and the Superintendent.

Hancock claims that the order is a prior restraint of his First Amendment rights to free speech and association.

The United States Supreme Court has defined prior restraints as "administrative and judicial orders forbidding certain communications where issued in advance of the time that such communications will occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993). Such rules and orders, which force a person to ask permission to speak, bear a heavier presumption against constitutionality than those that merely penalize people who have already spoken. *Kessler v. City of Providence*, 167 F.Supp.2d 482, 485 (D.R.I. 2001).

"In determining the validity of a prior restraint on the speech of public employees, the Supreme Court directs courts to look at whether the restriction regards matters of public concern." *Kessler*, 167 F.Supp.2d at 485-86 (citing *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454 (1995) (hereinafter *NTEU*). "A matter of public concern is one relating to a matter of political, social, or other concern to the community." *Kessler*, 167 F.Supp.2d at 486 (internal quotations omitted). Restraints on speech related to matters of personal interest are

**Memorandum Decision and Order - 3**

not subject to the same heightened scrutiny as those which seek to restrain an employee from commenting on matters of public concern. *See NTEU*, 513 U.S. at 466; *see also Kessler*, 167 F.Supp.2d at 486.

If a prior restraint prohibits speech on matters of public concern, "'the government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's necessary impact on the actual operation of the government.'" *Kessler*, 167 F.Supp.2d at 486 (quoting *NTEU*). "A restriction will not be upheld absent a showing by the government that it has 'a reasonable ground to fear that serious evil will result if free speech is practiced.'" *Kessler*, 167 F.Supp.2d at 486 (quoting *NTEU*). However, "[m]ere speculation and conjecture about the possibility of harmful results is not enough." *Kessler*, 167 F.Supp.2d at 486.

In this case, the order was a prior restraint. The order forbade Hancock from making any future communication with the school, students, parents and other school personnel. The question then becomes whether the order prohibited speech on matters of public concern.

As noted above, the order prohibited Hancock from making any contact with the school, students, parents and school personnel. Such an all-encompassing

**Memorandum Decision and Order - 4**

order necessarily prohibits speech on matters of public concern.  Thus, absent a showing that Defendants had a reasonable ground to fear that serious evil would result, the sweeping ban on Hancock's communication violated Hancock's First Amendment rights to free speech and association.  *See Kessler*, 167 F.Supp.2d at 487 (citing *NTEU*).

In defense of its order, Defendants assert that they issued the order as a direct result of a verbal threat Hancock made against one of the school district employees as well as his inappropriate contact with one of his students.  With regard to the threat, Defendants are apparently referring to comments Hancock made to his colleague, Margie Kennedy, in response to Principal McConnell's actions.  In the conversation with Kennedy, Hancock compared himself to the Count of Monte Cristo and told Kennedy that he would prevail, even if he had to go to prison.  As to the inappropriate contact with a student, Defendants are apparently referring to a note written by Hancock to one of his female students, which was signed with the word "love" in red gel pen, followed by a red heart.  (See Defendants' Statement of Facts, Docket No. 13-4, ¶¶17,21).

The Court finds that these incidents did not warrant the sweeping ban on Hancock's communication and contact with all students, parents and other school personnel.  Defendants have not put forth sufficient evidence demonstrating that

**Memorandum Decision and Order - 5**

the interests of potential audiences are outweighed by the potential impact of Hancock's communication with all students, parents and other school personnel on the actual operation of the school district. The order was simply so broad that it was clearly overbroad. Accordingly, the Court will grant Hancock summary judgment on his First Claim for Relief.

### B.     Second Claim for Relief - Violation of Idaho Constitution.

The parties also filed cross motions for summary judgment on Hancock's second claim for relief. Both parties agree that the Idaho Constitution provides for protection of freedoms substantially similar to those of the First Amendment to the United States Constitution. However, Defendants contend that there is no private cause of action for an alleged violation of the Idaho State Constitution, absent some form of enabling legislation.

Although no Idaho appellate courts have addressed the issue, Defendants provided the Court with several Idaho trial court opinions which unequivocally state that general constitutional law provides that a state constitutional guarantee does not, in itself, establish a cause of action for money damages against the state in favor of a person alleging deprivation of a property right in free speech and assembly cases. (See cases attached to Affidavit of Brian K. Julian, Exs. F-I,). This Court has not identified any Idaho courts stating otherwise. Moreover, as the

**Memorandum Decision and Order - 6**

Idaho trial courts have stated, there is no Idaho statute which serves a function analogous to that of 42 U.S.C. § 1983 by creating a cause of action for violations of Idaho's Constitution. This Court agrees. Accordingly, the Court will grant summary judgment in favor of Defendants as to Hancock's claim for damages under the Idaho Constitution.

      **C.**    **Third Claim for Relief - Violation of Idaho Code § 33-518.**

The parties filed cross motions for summary judgment on Hancock's third claim for relief. Both parties agree that Idaho Code § 33-518 requires a school district to place all materials relevant to the evaluation of an employee in the individual's employee file maintained by the school district. Those materials must be made available for the employee's review prior to submission into the personnel file, and the employee may prepare and submit rebuttal documentation for the file. See I.C. § 33-518.

Hancock claims that the School District violated I.C. § 33-518 when it obtained written statements from Hancock's team colleagues, used them to evaluate him, and destroyed them instead of placing them in Hancock's personnel file.

The School District argues, first, that there is no private cause of action under I.C. § 33-518, and therefore Defendants are entitled to summary judgment as

**Memorandum Decision and Order - 7**

a matter of law. The School District cites *Brock v. Board of Directors, Independent School District No. 1*, 5 P.3d 981 (Idaho 2000) for its proposition. In *Brock*, the Idaho Supreme Court found that when a statute is silent regarding private enforcement, courts may recognize a private right only when it is necessary to assure the effectiveness of the statute. *Brock*, 5 P.3d at 984. Still, a "court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action. . . ." *Brock*, 5 P.3d at 984. In addressing I.C. § 33-517, the Idaho Supreme Court in *Brock* determined that no private cause of action was necessary because the grievance procedure provided by the act was adequate to fulfill the act's purposes.

Unlike I.C. § 33-517, I.C. § 33-518 does not provide for any type of grievance procedure or other means of enforcing the act. Thus, the Court will recognize a private right of action in order to assure the effectiveness of the statute.

The School District next argues that even if there is a private right of action, the School District did not violate the statue because it did not use the destroyed documents to evaluate Hancock, and that they were not relevant to his evaluation. Predictably, Hancock views the record in a different light. There is no dispute that

the documents were created, and then destroyed. Whether the School District used the documents, prior to their destruction or just from memory, to evaluate Hancock is a disputed genuine issue of material fact. Therefore, the Court will recognize the existence of a private right of action under the statute, but deny both parties' motions for summary judgment on this claim.

### D. Fourth Claim for Relief - Violation of Idaho Code § 33-513(5) and the Non-Delegation Doctrine.

The parties filed cross motions for summary judgment on Hancock's fourth claim for relief. Idaho Code § 33-513(5) establishes that a school district board of trustees has the power and duty to suspend certified professional personnel. Although Board Policy 2002.1(5) authorizes the Superintendent to recommend suspension, Idaho Code does not vest the Superintendent with the authority to actually suspend certified professional personnel.

There is no dispute that Superintendent Murdock initially suspended Hancock on October 25, 2002. The parties dispute whether the Board could delegate its authority to suspend Hancock to the Superintendent. Ultimately, Defendants assert that it was not by delegation, but by independent authorization under prior authority, that the Superintendent suspended Hancock.

Defendants contend that the Superintendent, as the executive officer of the School District, must be able to act in unusual circumstances to protect people and

**Memorandum Decision and Order - 9**

property and that the Board gave him that authority under Board Policies 111.1, 111.2, 115.2, 202, 202.1(1) and 202.1(6).  A review of these policies shows that the Superintendent is vested with certain general powers and responsibilities, but he does not have the same power vested in the Board by Idaho Code § 33-513(5).  Moreover, Board Policy 202.1(5) specifically states that the Superintendent has the power to recommend suspension, not effectuate it.  Any construction of the other Board Policies giving the Superintendent power to suspend Hancock would defeat the purpose of Board Policy 202.1(5).  Accordingly, the Court does not find independent authorization for the Superintendent to suspend Hancock.  Therefore, the Court will grant Hancock summary judgment and find that Defendants violated I.C. § 33-513(5).

      **E.**    **Claims Five-Eleven and Fifteen, Breach of Contract Claims.**

In claims five through eleven and fifteen, Hancock asserts a number of breach of contract claims based on alleged violations of the Negotiated Master Contract and various Board Policies.  It is a fundamental premise of contract law that, although a plaintiff may have been legally wronged, the plaintiff cannot recover damages unless he was economically injured.  *See Bergkamp v. Martin*, 759 P.2d 941 (Idaho 1988).  As discussed by the Court and counsel at oral argument on the pending motions, Hancock does not claim, and apparently cannot

**Memorandum Decision and Order - 10**

establish, any economic damages for his breach of contract claims. Hancock's pay was never suspended or reduced based on any of the alleged contract breaches.

Accordingly, the Court will grant Defendants summary judgment on Hancock's breach of contract claims. The Court recognizes that the contract damages issue was not the focus of either the briefing or oral argument in this matter. While, the issue seems straightforward to the Court, Hancock may pursue a motion for reconsideration if he believes the record before the court would support a claim for economic damages.

### F. Twelfth Claim for Relief - Invasion of Privacy.

In his twelfth claim for relief, Hancock asserts tortious invasion of privacy based on Idaho law. Idaho does recognize the tort of invasion of privacy, and the Idaho Supreme Court "has distinguished four categories of action constituting an invasion of privacy: (1) intrusion into plaintiff's seclusion or solitude or into his private affairs; (2) public disclosure of private facts; (3) publicity which places plaintiff in a false light; and (4) appropriation of the plaintiff's name or likeness for defendant's advantage." *Jensen v. State of Idaho*, 72 P.3d 897, 902 (Idaho 2003).

In his Complaint, Hancock seeks relief under the first two categories. Hancock now seeks summary judgment on both claims. Defendants seek summary judgment on Hancock's public disclosure claim.

**Memorandum Decision and Order - 11**

### 1.   Invasion of Privacy by Intrusion

A claim of invasion of privacy by intrusion requires: "(1) an intentional intrusion by the defendant; (2) into a matter, which the plaintiff has a right to keep private; (3) by the use of a method, which is objectionable to the reasonable person." *Jensen*, 72 P.3d at 902.  It is not altogether clear what facts Hancock asserts to fulfill his requirements under a claim for invasion of privacy by intrusion.  In his Complaint, Hancock simply directs the reader to his Twelfth Claim for Relief.  Assuming he meant a claim other than his Twelfth Claim for Relief, because his Twelfth Claim for Relief is actually his invasion of privacy claim, Hancock's reference is still unhelpful.  Moreover, in his briefs, although he inserts subtitles alleging a claim for invasion of privacy by intrusion, Hancock focuses his argument on an assertion that Defendants disclosed his private information to others.

"Liability for a claim of invasion of privacy by intrusion must be based upon an intentional interference with the plaintiff's interest in solitude or seclusion, either as to his person or as to his private affairs or concerns.  This form of invasion of privacy does not depend upon any publicity given to the person whose interest is invaded or to his affairs." *Uranga v. Federated Publications, Inc.*, 67 P.3d 29, 32 (Idaho 2003) (internal citations omitted).  Hancock has failed to set

**Memorandum Decision and Order - 12**

forth sufficient facts to warrant summary judgment on his invasion of privacy by intrusion claim. Accordingly, the Court will deny Hancock's motion as it relates to that claim.

## 2.     Invasion of Privacy by Public Disclosure of Private Facts.

"The cause of action for public disclosure of embarrassing private facts 'provides for tort liability involving a judgment for damages for publicity given to true statements of fact.'" *Uranga*, 67 P.3d at 32-33 (quoting Restatement (Second) of Torts § 652D). The elements of this cause of action are as follows: (1) the disclosure of the private facts must be a public disclosure and not a private one; (2) the facts disclosed to the public must be private facts, and not public ones; and (3) the matter made public must be one which would be offensive and objectionable to a reasonable person of ordinary sensibilities. *See Baker v. Burlington Norther, Inc.*, 587 P.2d 829, 832 (Idaho 1978).

Hancock's claim for public disclosure is based on his assertion that Defendants allowed Dr. Corgiat to testify concerning Hancock's psychological evaluation before Hancock's Voyager teammates and former principal. Elements two and three of Hancock's claim are easily met. The facts disclosed, a psychological evaluation, are private facts, and disclosure of such an evaluation would certainly be offensive and objectionable to a reasonable person. The

**Memorandum Decision and Order - 13**

question then, is whether the disclosure was a public one.

Restatement (Second) of Torts § 652D, which addresses invasion of privacy by publicity, defines publicity as follows:

> *a. Publicity.* The form of invasion of the right of privacy covered in this Section depends upon publicity given to the private life of the individual. "Publicity," as it is used in this Section, differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.
>
> Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication

In this case, the private information was communicated to a small group of Hancock's colleagues. It was not published in a newspaper or magazine, broadcast over the radio, or made in an address to a large audience. Therefore, the Court

**Memorandum Decision and Order - 14**

concludes that there was no public disclosure. Accordingly, the Court will grant Defendants summary judgment on Hancock's claim for invasion of privacy by public disclosure of private facts.

### G.  Thirteenth Claim for Relief - Intentional Infliction of Emotional Distress.

Defendants move for summary judgment on Hancock's thirteenth claim for relief. "In Idaho, four elements are necessary to establish a claim of intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Estate of Becker v. Callahan*, 96 P.3d 623, 628 (Idaho 2004) (internal quotations omitted). "Courts have required very extreme conduct before awarding damages for the intentional infliction of emotional distress. Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Estate of Becker*, 96 P.3d at 628.

Hancock basis his claim on an assertion that Defendants suspended him, forced him to submit to a psychological examination, imposed the "no contact" order on him, transferred him, and allowed Dr. Corgiat to disclose confidential

**Memorandum Decision and Order - 15**

medical information to others. Defendants respond by arguing that their conduct was not extreme or outrageous and that Hancock has not suffered severe emotional distress.

Whether Defendants' conduct was extreme and outrageous, and the extent of Hancock's emotional distress, is better left to a jury to determine at trial in this matter. Trial will provide the finder of fact with more context in which to make those determinations. Moreover, the issue of causation is also better left to the jury on this matter. Accordingly, the Court will deny Hancock's motion for summary judgment on his intentional infliction of emotional distress claim.

### H.  Fourteenth Claim for Relief - Negligent Infliction of Emotional Distress.

Defendants move for summary judgment on Hancock's fourteenth claim for relief, which asserts a claim for negligent infliction of emotional distress. "[I]n order to allege and prove a claim for negligent infliction of emotional distress there must be both an allegation and *proof* that a party claiming negligent infliction of emotional distress has suffered a physical injury, i.e., a physical manifestation of an injury *caused* by the negligently inflicted emotional distress." *Cook v. Skyline Corp.*, 13 P.3d 857, 865-66 (Idaho 2000) (emphasis in original, internal quotations omitted).

Hancock asserts that he suffered loss of appetite, weight loss, sleeplessness,

**Memorandum Decision and Order - 16**

headaches, nausea, anxiety, depression and gastrointestinal difficulties.  Assertions in a complaint are sufficient to constitute an allegation of a manifestation of a physical injury to raise an issue of fact, which requires a trial on the issue, so long as the allegations do not require expert testimony.  *Cook*, 13 P.3d at866.  At least some of Hancock's allegations do not require expert testimony, including his allegations of sleeplessness, headaches and nausea.  Accordingly, the Court will deny Defendants' motion for summary judgment on Hancock's claim for negligent infliction of emotional distress.

## ORDER

NOW THEREFOR IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment as to Plaintiff's State Law Claims (Docket No. 13) shall be, and the same is hereby, GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as to Plaintiff's Constitutional Claims (Docket No. 14) shall be, and the same is hereby, GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 19) shall be, and the same is hereby, GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendants' are granted summary

**Memorandum Decision and Order - 17**

judgment on Plaintiff's Second, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth and Fifteenth claims.

IT IS FURTHER ORDERED that Plaintiff is granted summary judgment on Plaintiff's First and Fourth claims.



DATED: **May 2, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 18**